UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON.COM, INC., et al.,<br><br>                  Plaintiffs,<br><br>  v.<br><br>SEMRA ACAR, et al.,<br><br>                  Defendants. | CASE NO. C23-0749JLR<br><br>ORDER |

### I.    INTRODUCTION

Before the court is Plaintiffs Amazon.com, Inc., Amazon.com Services LLC, (together, "Amazon"), and YETI Coolers, LLC's ("YETI," and together with Amazon, "Plaintiffs") *ex parte* motion for default judgment against Defendants Semra Acar (doing business as the Amazon selling account Semra Acar), and Derya Bickes (doing business as the Amazon selling account Deryastore46) (together, "Defendants"). (Mot. (Dkt. # 28).) The court has reviewed Plaintiffs' motion, the relevant portions of the record, and

ORDER - 1

the governing law. Being fully advised,[1] the court GRANTS Plaintiffs' motion for entry of default judgment and for a permanent injunction.

## II. BACKGROUND

This action arises out of Defendants' alleged operation of selling accounts on Amazon.com through which they sold counterfeit YETI-branded drinkware. (*See* Compl. (Dkt. # 1) ¶¶ 36-42 (describing each Defendant's alleged sales of counterfeit YETI products); *see id.* ¶¶ 3-4 (describing YETI's products and registered trademarks); *see also* Zuercher Decl. (Dkt. # 30) ¶ 3, Ex. A (copies of registration certificates for the YETI trademarks).) According to Plaintiffs, Semra Acar sold counterfeit YETI products in the Amazon store from September 2022 through October 2022, and Derya Bickes sold counterfeit YETI products from September 2022 through November 2022. (Compl. ¶¶ 38, 40; *see* Garrett Decl. (Dkt. # 48) ¶ 3 (summarizing the sales made through each selling account).)

Plaintiffs filed this case on May 23, 2023, against Defendants and ten unknown Doe Defendants. (*See generally* Compl.) On June 18, 2024, the court granted Plaintiffs leave to serve Defendants by sending the summons and complaint to the email addresses associated with Defendants' Amazon selling accounts. (6/18/24 Order (Dkt. # 20); see Serv. Mot. (Dkt. # 17).) Plaintiffs served Defendants on June 20, 2024. (Service Affs. (Dkt. ## 21-22).) The Clerk entered default as to Defendants on July 22, 2024. (Default (Dkt. # 24); *see* Def. Mot. (Dkt. # 23).)

---

[1] The court finds oral argument unnecessary to its disposition of the motion. *See* Local Rules W.D. Wash. LCR 7(b)(4).

On October 15 2024, Plaintiffs voluntarily dismissed their claims against the Doe Defendants. (10/15/24 Not. (Dkt. # 27).) They filed the instant motion for default judgment against the remaining three Defendants on that same day. (*See* Mot.)

### III.   ANALYSIS

Below, the court considers its jurisdiction over this action, sets forth the legal standard for evaluating a motion for default judgment, and determines whether Plaintiffs have satisfied the requirements for entry of default judgment.

**A.   Jurisdiction**

As a preliminary matter, a court evaluating a motion for default judgment "has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The court concludes that it has jurisdiction to decide Plaintiffs' motion.

First, the court has federal question subject matter jurisdiction over this action based on Plaintiffs' Lanham Act claims for trademark infringement, false designation of origin, and false advertising. *See* 15 U.S.C. § 1121(a) (providing district courts original jurisdiction over actions arising under the Lanham Act); 28 U.S.C. § 1331 (providing district courts original jurisdiction over civil actions arising under the laws of the United States); 28 U.S.C. § 1338 (providing district courts original jurisdiction over civil actions arising under any federal statute relating to trademarks); *see also* 28 U.S.C. § 1367 (providing district courts supplemental jurisdiction over related state-law claims).

Second, the court has personal jurisdiction over Defendants because, taking the factual allegations in the complaint as true, (1) Defendants transacted business using a

Washington state company as its sales platform, reached out to do business with Washington residents through that platform, and sold counterfeit products to Washington residents; (2) Plaintiffs' claims arose from these contacts with Washington state; and (3) the Amazon Business Solutions Agreement ("BSA") between Defendants and Amazon contains a forum selection clause setting jurisdiction in this court. (Compl. ¶¶ 14-15; *id.* Ex. B ("BSA")); *see Expensify, Inc. v. Swappoint AG*, No. 22-CV-05720-LB, 2023 WL 6323103, at *4 (N.D. Cal. Sept. 28, 2023) ("Specific jurisdiction exists when the suit arises out of or relates to the defendant's contacts with the forum." (citing *Walden v. Fiore*, 571 U.S. 277, 284 (2014))).

Having determined that it has jurisdiction over the subject matter and the parties, the court proceeds to consider Plaintiffs' motion for default judgment.

**B.    Legal Standard**

Federal Rule of Civil Procedure 55(b)(2) authorizes the court to enter default judgment against a defaulted defendant upon the plaintiff's motion. Fed. R. Civ. P. 55(a), (b)(2). After the court enters default, the well-pleaded factual allegations in the complaint, except those related to damages, are considered admitted and are sufficient to establish a defendant's liability. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

Entry of default judgment is left to the court's sound discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising its discretion, courts in the Ninth Circuit consider the seven "*Eitel* factors": (1) the possibility of prejudice to the plaintiff if relief is denied; (2) the substantive merits of the plaintiff's claims; (3) the sufficiency

of the claims raised in the complaint; (4) the sum of money at stake in relationship to the defendant's behavior; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the preference for decisions on the merits when reasonably possible. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). If the court determines that default judgment is appropriate, it must then determine the amount and character of the relief that should be awarded. *See TeleVideo*, 826 F.2d at 917-18.

**B.  The *Eitel* Factors**

Plaintiffs argue that the *Eitel* factors favor entry of default judgment against all three Defendants. (*See* Mot. at 5-9 (arguing that Plaintiffs have established Defendants' liability on each claim); *id.* at 9-10 (discussing the remaining *Eitel* factors).) The court agrees with Plaintiffs.

    1.    <u>Possibility of Prejudice to Plaintiffs</u>

Under the first *Eitel* factor, the court considers whether the plaintiff will suffer prejudice if default judgment is not entered. *See PepsiCo, Inc., v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Without default judgment, Plaintiffs will suffer prejudice because they will "be denied the right to judicial resolution" of their claims and will be "without other recourse for recovery." *Elektra Ent. Grp. Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005). Thus, the first *Eitel* factor weighs in favor of entering default judgment.

### 2. Substantive Merits and Sufficiency of the Complaint

"The second and third *Eitel* factors—the substantive merits of the plaintiff's claim and the sufficiency of the plaintiff's complaint—are often analyzed together." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) (citing *PepsiCo*, 238 F. Supp. 2d at 1175). For these factors to weigh in favor of default judgment, the complaint's allegations must state a claim for relief. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). A complaint satisfies this standard when it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 570 (2007)). At the default judgment stage, the court "must take the well-pleaded factual allegations [in the complaint] as true" but "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992); *see also DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (declining to take as true "allegations that parrot the language of" the relevant statute).

Plaintiffs assert that they have plausibly alleged that Defendants are liable for trademark infringement, false designation of origin, violations of the Washington Consumer Protection Act, ch. 19.86 RCW ("WCPA"), and breach of contract. (Mot. at 5-9.) The court reviews each claim in turn.

#### a. *Trademark Infringement*

First, YETI seeks entry of default judgment on its claim that Defendants infringed its trademarks in violation of the Lanham Act, 15 U.S.C. § 1114. (Mot. at 5-7; *see*

Compl. ¶¶ 47-53.)  To state a claim for trademark infringement under § 1114(1)(a), YETI must plausibly allege that Defendants used:

> (1) a reproduction, counterfeit, copy or colorable imitation of [the] plaintiff's registered trademark, (2) without its consent, (3) in commerce, (4) in connection with the sale, offering for sale, distribution or advertising of any goods, (5) where such use is likely to cause confusion, or to cause a mistake or to deceive.

*Amazon.com v. Kurth*, No. C18-0353RAJ, 2019 WL 3426064, at *2 (W.D. Wash. July 30, 2019) (citing 15 U.S.C. § 1114(1)(a) and *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 929 (9th Cir. 2014)).  "Likelihood of confusion exists when consumers viewing the mark would probably assume that the goods it represents are associated with the source of a different product identified by a similar mark." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 608 (9th Cir. 2005).  When a defendant uses a counterfeit mark, courts presume that there is a likelihood of consumer confusion. *See Coach, Inc. v. Pegasus Theater Shops*, No. C12-1631MJP, 2013 WL 5406220, at *3 (W.D. Wash. Sept. 25, 2013) (compiling cases).  The Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." *Id.* (quoting 15 U.S.C. § 1127).

      Taking Plaintiffs' factual allegations as true, YETI has plausibly alleged that it owns the trademarks at issue (Compl. ¶¶ 3-4; *see* Zuercher Decl. ¶ 3, Ex. A) and that Defendants sold products on Amazon (that is, in commerce) that bore counterfeit imitations of those trademarks (Compl. ¶¶ 38, 40).  Thus, the court presumes a likelihood of consumer confusion, *see Coach, Inc.*, 2013 WL 5406220, at *3, and concludes that YETI has met its burden to demonstrate Defendants' liability for trademark infringement.

b.    *False Designation of Origin*

Second, Plaintiffs assert that they are entitled to default judgment on their claims for false designation of origin under 15 U.S.C. § 1125(a).[2] (Mot. at 7-8; *see* Compl. ¶¶ 54-62 (pleading claim on behalf of YETI), 63-70 (pleading claim on behalf of Amazon).)  To state a claim for false designation of origin, Plaintiffs must plausibly allege that Defendants:

> (1) used in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question.

*Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1170 (N.D. Cal. 2015) (citing *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007)); 15 U.S.C. § 1125(a)(1)(A).  A plaintiff need not own the trademarks that are infringed to state a claim for trademark infringement.  *See Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*, 310 F. Supp. 3d 1089, 1114 (S.D. Cal. 2018).

Again taking the well-pleaded allegations as true, the court concludes that Plaintiffs have demonstrated that Defendants are liable on default judgment for false designation of origin because Plaintiffs have plausibly alleged that Defendants sold products through their Amazon selling accounts that bore counterfeit YETI trademarks. (*See* Compl. ¶¶ 38, 40); *Coach, Inc.*, 2013 WL 5406220, at *3.

---

[2] Plaintiffs voluntarily dismiss without prejudice the false advertising claims they pleaded with their false designaton of origin claims.  (*See* Mot. at 7 n.4.)

ORDER - 8

       *c.*  *Washington Consumer Protection Act*

Third, Plaintiffs assert that they are entitled to default judgment on their WCPA claim. (Mot. at 8-9; *see* Compl. ¶¶ 71-75.) To state a claim for violation of the WCPA, Plaintiffs must plausibly allege that (1) an unfair or deceptive act or practice, (2) occurred in the course of trade or commerce, (3) impacted the public interest, (4) injured the plaintiff's business or property, and (5) was caused by the defendant. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986); RCW 19.86.020. A WCPA claim "may be predicated upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." *Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1187 (Wash. 2013).

Federal trademark claims brought under the Lanham Act are "substantially congruous" to state claims under the WCPA. *BBC Grp. NV LLC v. Island Life Rest. Grp. LLC*, No. C18-1011RSM, 2020 WL 758070, at *2 (W.D. Wash. Feb. 14, 2020) (quoting *Safeworks, LLC v. Teupen Am., LLC*, 717 F. Supp. 2d 1181, 1192 (W.D. Wash. 2010)). Thus, "[a] finding of trademark infringement constitutes an 'unfair or deceptive act'" and "satisfies the 'affecting public interest prong'" under the WCPA "because it involves deception or confusion of the public." *Id.* at *2-3 (citing *Nordstrom, Inc. v. Tampourlos*, 733 P.2d 208, 210 (Wash. 1987)). Accordingly, because Plaintiffs have established that Defendants are liable for trademark infringement, they have also established Defendants' liability under the WCPA.

ORDER - 9

     *d.*  Breach of Contract

Finally, Amazon.com Services LLC asserts that it is entitled to default judgment on its breach of contract claim. "A breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." *Nw. Indep. Forest Mfrs. v. Dep't of Lab. & Indus.*, 899 P.2d 6, 9 (Wash. Ct. App. 1995)). Here, Defendants agreed to be bound by the terms of Amazon's BSA when they set up their Amazon selling accounts, including Amazon's Anti-Counterfeiting Policy. (*See* Compl. ¶¶ 29-35, 77.) Defendants' sale and distribution of counterfeit YETI-branded products materially breached the BSA and the Anti-Counterfeiting Policy by infringing YETI's intellectual property. (*Id.* ¶¶ 79-80.) Accordingly, the court concludes that Amazon.com Services LLC has established that Defendants are liable for breach of the BSA and the Anti-Counterfeiting Policy.

Amazon.com Services LLC also asserts that Defendants breached § 6.1 of the BSA by failing to reimburse Amazon $19,175 that Amazon paid to refund customers who bought counterfeit YETI products from Defendants. (Mot. at 9.) Plaintiffs, however, did not include this alleged breach in their complaint. (*See generally* Compl.) Thus, the court does not take the allegation that Defendants breached § 6.1 as true and, as a result, denies Amazon.com Services LLC's motion for default judgment on its claim for breach of § 6.1 of the BSA.

In sum, the court concludes that the second and third *Eitel* factors weigh in favor of entering default judgment except as to Amazon.com Services LLC's motion for default judgment based on Defendants' alleged breach of § 6.1 of the BSA.

3.     Sum of Money at Stake

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of [the d]efendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. Here, Plaintiffs ask the court to award YETI statutory damages of three times the total sales of counterfeit YETI-branded drinkware made through Defendants' Amazon selling accounts. They seek $15,675 from Semra Acar and $76,773 from Derya Bickes, for a total award of $92,448. (Mot. at 14-15 (citing Garrett Decl. ¶ 3).) These amounts are well within the range of statutory damages authorized by Congress for the willful use of a counterfeit mark. *See* 15 U.S.C. § 1117(c)(2) (authorizing the court to award up to $2,000,000 per counterfeit mark); *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (holding that complaint's willful infringement allegations were deemed true after default); (Compl. ¶¶ 6, 43, 60, 65, 67-68 (alleging Defendants engaged in willful conduct)).[3] The court concludes that the fourth *Eitel* factor does not weigh against default judgment.

4.     Possibility of a Dispute over Material Facts

Courts evaluating the fifth *Eitel* factor "consider[] the possibility of dispute as to any material facts in the case." *PepsiCo*, 238 F. Supp. 2d at 1177. "When default has been entered, courts find that there is no longer the possibility of a dispute concerning material facts because the court must take the plaintiff's factual allegations as true."

---

[3] The court does not consider Amazon.com Services LLC's request for breach of contract damages because Amazon.com Services LLC has failed to establish that they succeed on the merits of that claim.

*Curtis*, 33 F. Supp. 3d at 1212.  Because default has already been entered against Defendants (*see* Entry of Default), the court concludes that the fifth *Eitel* factor weighs in favor of default judgment.

### 5. Excusable Neglect

Under the sixth *Eitel* factor, courts consider the possibility that the defendant's default resulted from excusable neglect.  *PepsiCo*, 238 F. Supp. 2d at 1177.  Plaintiffs have provided evidence that Defendants were properly served (*see* Service Cert.); the court entered default against Defendants (*see* Entry of Default); and there is no evidence in the record that would support a finding that any Defendant's failure to answer or respond is the result of excusable neglect.  Accordingly, the court concludes that the sixth *Eitel* factor weighs in favor of default judgment.

### 6. Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472.  Where, as here, a defendant fails to appear or defend itself in the action, however, the policy favoring decisions on the merits is not dispositive.  *PepsiCo*, 238 F. Supp. 2d at 1177.  Therefore, the court concludes that the seventh *Eitel* factor does not preclude entry of default judgment.  As a result, because the *Eitel* factors either favor or do not weigh against entry of default judgment, the court concludes that default judgment is appropriate here.

**C. Requested Relief**

Having determined that the *Eitel* factors favor entry of default judgment, the court now turns to the question of remedies.  "A default judgment must not differ in kind from,

or exceed in amount, what is demanded in the [complaint]." Fed. R. Civ. P. 54(c); *see Fong v. United States*, 300 F.2d 400, 413 (9th Cir. 1962). Defaulting defendants are not deemed to have admitted the facts alleged in the complaint concerning the amount of damages. *TeleVideo*, 826 F.2d at 917. Rather, the plaintiff "must 'prove up' the amount of damages that it is claiming." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003); *see also* Local Rules W.D. Wash. LCR 55(b)(2) (requiring a plaintiff moving for default judgment to submit "a declaration and other evidence establishing [the] plaintiff's entitlement to a sum certain and to any nonmonetary relief sought"). By analogy, the plaintiff must also "prove up" its entitlement to other forms of relief, such as a permanent injunction. *See Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 120-21 (S.D.N.Y. 2008).

   1. <u>Statutory Damages</u>

  Under the Lanham Act, a plaintiff may elect whether to recover the actual damages caused by a defendant's use of a counterfeit mark or statutory damages. 15 U.S.C. § 1117(c). YETI has elected to seek statutory damages. (Mot. at 11-15; *see* Compl. § VI.E (including an award of statutory damages to YETI in Plaintiffs' prayer for relief).) If the court finds that a defendant's use of a counterfeit mark was willful, it has discretion to award statutory damages of "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2). Because Plaintiffs' allegations that Defendants willfully infringed the two YETI trademarks is deemed true, the court may award up to $4,000,000 in statutory damages. (*See, e.g.*, Compl. ¶¶ 4-6 (describing YETI's trademarks and

alleging willful conduct); *Derek Andrew, Inc.*, 528 F.3d at 702. "[S]tatutory damages may compensate the victim, penalize the wrongdoer, deter future wrongdoing, or serve all those purposes." *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1008 (9th Cir. 2023) (citing *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1011 (9th Cir. 1994)). The plaintiff, however, "is not entitled to a windfall." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1102 (N.D. Cal. 2014) (citing *Adobe Sys., Inc. v. Tilley*, No. C 09-1085 PJH, 2010 WL 309249, at *5-6 (N.D. Cal. Jan. 19, 2010)). Therefore, courts consider whether the amount of statutory damages requested bears a "plausible relationship to [the p]laintiff's actual damages." *Id.* (quoting *Adobe Sys., Inc.*, 2010 WL 309249, at *5).

Here, YETI seeks an award of three times the aggregate sales of counterfeit YETI-branded products made through Defendants' Amazon selling accounts. (Mot. at 14-15.) According to Amazon, Semra Acar sold a total of $5,225 in counterfeit YETI-branded products through the Semra Acar selling account and Derya Bickes sold a total of $25,591 in counterfeit YETI-branded products through Deryastore46 selling account. (Garrett Decl. ¶ 3.) Thus, Defendants seek an award of $15,675 in statutory damages against Semra Acar and an award of $76,773 in statutory damages against Derya Bickes. (Mot. at 14-15.)

The court concludes that these awards are (1) consistent with the amounts awarded by other courts in this District for similar conduct, (2) proportional to the damages YETI actually suffered, and (3) sufficient to deter Defendants from further willful infringement, but (4) not so large as to result in a windfall for YETI. *See, e.g.*, *Amazon.com, Inc. v. Sirowl Tech.*, No. C20-1217RSL-JRC, 2022 WL 19000499, at *5 (W.D. Wash. Oct. 3,

2022) (awarding statutory damages of three times Defendants' aggregate sales of counterfeit products); *Amazon.com, Inc. v. White*, No. C20-1773JHC, 2022 WL 1641423, at *5 (W.D. Wash. May 24, 2022) (same). Therefore, the court grants Plaintiffs their requested statutory damages awards.

Because, as discussed above, Amazon.com Services LLC is not entitled to default judgment on its breach of contract claim based on § 6.1 of the BSA, the court denies Plaintiffs' request for actual damages incurred due to that breach.

2. <u>Permanent Injunctive Relief</u>

Plaintiffs ask the court to enter an order permanently enjoining and restraining "Defendants and their officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them who receive actual notice of the order" from:

    a.    selling counterfeit or infringing products in Amazon's stores;
    b.    selling counterfeit or infringing products to Amazon or any Amazon affiliate;
    c.    importing, manufacturing, producing, distributing, offering to sell, selling, promoting, or displaying any product using any simulation, reproduction, counterfeit, copy, or colorable imitation of YETI's brand or trademarks, or which otherwise infringes YETI's intellectual property, in any store or in any medium; and
    d.    assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities listed in (a) through (c) above.

(Mot. at 16-19; *see also* Prop. Order (Dkt. # 28-1) at 2-3.) The Lanham Act empowers courts "to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark." 15 U.S.C. § 1116(a). The WCPA also authorizes injunctions to prevent

ORDER - 15

violations of the statute. *See* RCW 19.86.090. A plaintiff seeking a permanent injunction must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (interpreting similar language in considering a motion for permanent injunctive relief under the Patent Act). "Generally, an injunction must be narrowly tailored to remedy only the specific harms shown by a plaintiff, rather than to enjoin all possible breaches of the law." *Kurth*, 2019 WL 3426064, at *5-6 (holding that an injunction against the defendant from "opening any Amazon Seller Accounts or otherwise selling products on any of Amazon's websites" would be overbroad (citing *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004))); (*see also* Compl. § VI.A (seeking an injunction with broader terms than those Plaintiffs request here).)

First, Plaintiffs satisfy the "irreparable injury" element because a plaintiff seeking a permanent injunction under the Lanham Act "shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a [trademark] violation." 15 U.S.C. § 1116(a).

Second, remedies available at law are inadequate because Plaintiffs allege that Defendants' sales of counterfeit YETI products through Amazon both threaten and have injured their businesses, reputations and goodwill. (*See, e.g.*, Compl. ¶¶ 53, 58, 61, 68.) "Harm resulting from . . . lost customer goodwill is irreparable because it is neither easily

1  calculable, nor easily compensable" and thus cannot be remedied by a monetary award.
2  *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1066 (N.D. Cal. 2000) (citing
3  *Cal. ex rel. Van de Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1316, 1319 (9th Cir.
4  1985)). Further, Defendants' failure to appear in this action suggests that their infringing
5  behavior may continue absent an injunction. *See Amazon.com Inc. v. Robojap Techs.*
6  *LLC*, No. C20-0694MJP, 2021 WL 5232130, at *4 (W.D. Wash. Nov. 10, 2021) (so
7  holding).

8        Third, the balance of hardships supports Plaintiffs. Absent an injunction,
9  Defendants could continue to sell counterfeit YETI products and sell counterfeit products
10 on Amazon.com, thus causing continuing harm to Plaintiffs. And because Defendants
11 never had a right to infringe YETI's trademarks in the first place, they will suffer no
12 harm from an injunction prohibiting unlawful infringement in the future. *See, e.g., Eve*
13 *Nev., LLC v. Derbyshire*, No. C21-0251LK, 2022 WL 279030, at *9 (W.D. Wash. Jan.
14 31, 2022) (finding the balance of hardships favored plaintiffs because the defendant
15 "would suffer no injury other than refraining from her infringing conduct").

16       Finally, entering a permanent injunction would serve the general public's interest
17 in protecting trademark holders' rights and minimizing the confusion caused by the
18 presence of counterfeit products in the marketplace. *See Treemo, Inc. v. Flipboard, Inc.*,
19 53 F. Supp. 3d 1342, 1368 (W.D. Wash. 2014) ("[I]njunctive relief serves the public
20 interest by protecting the rights of trademark holders against infringement and also
21 minimizing consumer confusion."); *Internet Specialties W., Inc. v. Milon-DiGiorgio*
22 *Enters., Inc.*, 559 F.3d 985, 993-94 (9th Cir. 2009) ("The essence of trademark

infringement is the likelihood of confusion, and an injunction should be fashioned to prevent just that."). The court concludes, therefore, that Plaintiffs' requested permanent injunction is warranted.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Plaintiffs' motion for default judgment (Dkt. # 28) and ORDERS as follows:

1. The court awards YETI statutory damages in the amount of three times the aggregate sales of counterfeit products from each Defendant's respective Amazon selling accounts, based on Defendants' willful violations of the Lanham Act as follows:

   a. An award of $15,675 against Semra Acar for counterfeit sales from the Semra Acar selling account.

   b. An award of $76,773 against Derya Bickes for counterfeit sales from the Deryastore46 selling account.

2. Defendants and their officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them who receive actual notice of the order, are permanently ENJOINED and RESTRAINED from:

   a. selling counterfeit or infringing products in Amazon's stores;

   b. selling counterfeit or infringing products to Amazon or any Amazon affiliate;

   c. importing, manufacturing, producing, distributing, offering to sell, selling, promoting, or displaying any product using any simulation, reproduction, counterfeit, copy, or colorable imitation of YETI's

ORDER - 18

brand or trademarks, or which otherwise infringes YETI's intellectual property, in any store or in any medium; and

   d. assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities listed in (a) through (c) above.

  3. Plaintiffs' false advertising claims are DISMISSED without prejudice.  (*See* Mot. at 7 n.4.)

  4. The court retains jurisdiction over this case for the purpose of enforcing this order and injunction, and for any supplemental proceedings that may be authorized by law.

  5. Plaintiffs' counsel are DIRECTED to serve a copy of this order and the accompanying judgment to Defendants at the last email addresses known to be used by Defendants or at the last physical address at which they received service.

  Dated this 15th day of October, 2024.

                     JAMES L. ROBART
                     United States District Judge